**In the Matter of Robert R. RICHARDS and Gail L. Richards, Debtors.**

**Nos. BK–63–1324, BK–63–1325.**

United States District Court
D. Maine, S. D.

Aug. 2, 1968.

See also D.C., 253 F.Supp. 913.

Sidney W. Wernick, John J. Flaherty, Theodore H. Kurtz, Portland, Me., Edward L. Caron, Biddeford, Me., for Aetna Finance Co., creditor.

Gerald S. Cope, Portland, Me., trustee.

James R. Flaker, Portland, Me., Charles W. Smith, Saco, Me., for trustee.

George P. Limberis, Bangor, Me., for debtors.

OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

This is a proceeding to determine the validity of a claim filed by Aetna Finance Company of Maine in these con-

solidated wage earner proceedings under Chapter XIII of the Bankruptcy Act, 11 U.S.C. § 1001 et seq. (1964). It is before the Court, acting in the stead of the referee in bankruptcy, upon remand following the District Court's decision of July 20, 1967, In re Richards, 272 F. Supp. 480 (D.Me.1967 [1]). The sole question presented for determination at this time is whether in connection with the loan transaction upon which Aetna's claim is based, Aetna violated Section 1208(4) of the Maine Credit Insurance Law, 24 M.R.S.A. § 1201 et seq. (1964), by charging the debtors an amount for credit life and disability insurance in excess of the premiums charged it by Old Republic Life Insurance Company; and, if so, whether that violation constituted a violation of Section 3082 of the Maine Small Loan Law, 9 M.R.S.A. § 3001 et seq. (1964), thereby rendering the loan usurious and void. The procedural background and the circumstances surrounding the loan transaction in question are adequately set forth in the District Court's opinion and will not be restated in this opinion, which is supplemental thereto. Only those additional facts adduced at the hearing on remand which are relevant to the determination of the present issue will be summarized here. Most of these are not seriously in dispute.

On July 2, 1962, the date of the loan transaction here in question, Aetna Finance Company of Maine (hereinafter Aetna of Maine), a Maine corporation licensed to do a small loan business in this state, was a wholly owned subsidiary of Aetna Finance Company of St. Louis (hereinafter Aetna of St. Louis), a Missouri corporation. Aetna of St. Louis was at that time the parent corporation of some 164 wholly owned subsidiaries engaged in small loan and related businesses in some 27 states. Among the wholly owned subsidiaries of Aetna of St. Louis was American Universal Life Insurance Company (hereinafter American Universal), a Missouri corporation, licensed to issue insurance in Missouri, but not in the State of Maine.[2] The credit insurance coverage provided to the debtors in this proceeding was issued pursuant to a master creditors group life and disability policy issued to Aetna of St. Louis by Old Republic Life Insurance Company (hereinafter Old Republic), covering borrowers from subsidiary loan companies of Aetna of St. Louis operating in Maine.[3] Old Republic was an independent insurance company located at Chicago, Illinois doing a nationwide insurance business and licensed to issue credit insurance in the State of Maine.[4] There was no corporate relationship of any kind between

1. Following the remand of this proceeding, the referee requested that he be relieved of any further responsibility with respect to Aetna's disputed claim. Accordingly, the standing order of reference was revoked *pro tanto*, and the District Judge is acting in this matter pursuant to Section 43(c) of the Bankruptcy Act, 11 U.S.C. § 71(c) (1964).

2. Since 1962, Aetna of St. Louis has become a wholly owned subsidiary of International Telephone and Telegraph Co. and has changed its name to ITT Aetna Corporation. American Universal has also changed its name and is now ITT Hamilton Life Insurance Company.

3. The master group life insurance policy in effect on July 2, 1962 was issued by Old Republic to Aetna of St. Louis in December 1961. To this policy was originally appended a rider affording health

and accident disability benefits to the same group on a seven-day retroactive basis. On or about May 2, 1962 this rider was replaced by a rider providing for three-day retroactive health and accident disability benefits. The new rider was backdated to December 31, 1961 in an effort to take advantage of a grace period provided by the Credit Insurance Law for policies issued prior to the effective date of the statute. See P.L. (Me.) 1961, ch. 221 § 170–G(VI).

4. It appears from the evidence that Old Republic is the oldest and one of the largest insurance companies operating in the credit insurance field in the United States, and that Old Republic's account with Aetna of St. Louis was only one of some 750 accounts it then had with other commercial institutions throughout the country.

Old Republic and Aetna of St. Louis or any of its subsidiaries.·

The life insurance afforded these debtors under the master policy issued by Old Republic was decreasing term group life insurance, and was designed to pay to the order of Aetna of St. Louis, as beneficiary, the outstanding indebtedness of any participating debtor who died before his loan was repaid. The accident and health insurance was on a three-day retroactive basis. This insurance would pay Aetna of St. Louis as indemnity 1/30 of the insured debtor's monthly installment for each day that the debtor was wholly and continuously disabled as a result of illness or injury so long as the disability period extended for at least three days. The debtor's participation in the insurance was evidenced by a certificate provided by Old Republic, but filled out and delivered by the Aetna Loan manager at the time of the loan transaction. The full amount of the credit life and disability insurance premiums charged the debtors in connection with the loan transaction here involved was deducted from the proceeds of the loan at the time of the loan transaction and was remitted by Aetna of Maine to Aetna of St. Louis, and by the latter to Old Republic.

On July 2, 1962 American Universal and Old Republic were parties to two reinsurance treaties. These treaties provided in substance that 91.25% of the premiums charged by Old Republic for life insurance, and 89% of the premiums charged by it for accident and health insurance, afforded borrowers of Maine subsidiaries of Aetna of St. Louis would be paid by Old Republic to American Universal, in return for American Universal's reinsuring the primary risk undertaken by Old Republic.[5] Pursuant to the reinsurance treaties, Old Republic remitted to American Universal 91.25% of the life insurance premium and 89% of the health and accident insurance premium charged to the debtors as a part of the loan transaction here involved.

It is not seriously disputed that the credit life insurance premium of $35.24 and the credit health and accident insurance premium of $115.92 charged these debtors were substantially in excess of the maximum premiums authorized to be charged for such insurance under the then applicable provisions of the Maine Credit Insurance Law.[6] It is also not seriously disputed that American Universal made a very substantial profit on its reinsurance of the lives and health of Aetna debtors.[7]

5. The reinsurance treaties further provided that American Universal was to be responsible for the processing and payment of all claims and that Old Republic would be responsible for compliance with applicable state insurance laws, for supplying appropriate forms and policies, for paying state premium taxes, license fees and all commissions, and for furnishing necessary actuarial and legal services. In practice, claims by Aetna debtors were paid by drafts drawn by American Universal on Old Republic. The amounts so paid were then deducted from Old Republic's periodic remittances to American Universal.

6. See In re Richards, supra at 483; In re Richards, 4 CCH Installment Credit Guide, para. 98, 556 at 89, 141–89, 142 (D.Me.1965) (Ref. op.).
It is agreed that the life insurance premium represented a premium rate of $1.00 per hundred of outstanding indebtedness per year, and that the health

and accident premium resulted from a rate of $7.00 per hundred of periodic payments over the 36-month term of the indebtedness.
Expert actuarial testimony offered by the trustee disclosed that the "commonly prevailing rate" throughout the country at this time for group credit life insurance was 39–49¢ per year per hundred, depending upon the amount sold. It further appears that in 1960, prior to the enactment of the Maine Credit Insurance Law, the only credit insurance offered by Aetna of Maine was issued under a group credit life insurance policy written by Old Republic, which provided coverage by Aetna of its borrowers in Maine at a cost to it of approximately 50¢ per year per hundred.

7. The evidence discloses that during the year 1962 American Universal's national loss ratio for credit life insurance was 32.-02% and for credit accident and health insurance was 29.97%. For the same

As has been stated, the only questions presented on remand are whether there was a violation of Section 1208(4) of the Maine Credit Insurance Law in connection with the loan transaction upon which Aetna's claim is based; and, if so, whether that violation constituted a violation of Section 3082 of the Maine Small Loan Law. After a careful consideration of the entire record and the comprehensive briefs and arguments of counsel, the Court is persuaded that both questions must be answered in the negative.

So far as the first question is concerned, the record wholly fails to establish a violation of Section 1208(4). Section 1208(4) enjoins a small loan company from charging a borrower for credit insurance more than the premium charged by the insurer in the following language:

> The amount charged to a debtor for any credit life or credit health and accident insurance shall not exceed the premiums charged by the insurer, as computed at the time the charge to the debtor is determined.

The undisputed evidence is that the amount of the credit insurance charge made to these debtors by Aetna of Maine was the precise amount of the premiums for such insurance charged by Old Republic to Aetna of St. Louis, and that it was transmitted in full by Aetna of Maine to Aetna of St. Louis, and by Aetna of St. Louis to Old Republic. Whatever the evidence may establish with respect to a violation of other provisions of the Maine Credit Insurance Law by Old Republic as the insurer, see In re Richards, 272 F.Supp. at 486–487, the conclusion is inescapable that no violation of Section 1208(4) has been shown because the amount charged the debtors by Aetna as the lender did not exceed the premiums charged Aetna by Old Republic.[8]

But even if it could be found that there was a violation of Section 1208(4) by Aetna, this record cannot support any violation of Section 3082. Section 1209 of the Credit Insurance Law provides:

> All policies of credit life insurance and credit accident and health insurance shall be delivered or issued for delivery in this State only by an insurer authorized to do an insurance business therein, and shall be issued only through holders of licenses or authorizations issued by the commissioner. *The premium or cost of such insurance when issued through any creditor shall not be deemed interest, or charges, or consideration, or an amount in excess of permitted charges in connection with the loan or other credit transaction, and any benefit or return or other gain or advantage to the creditor arising out of the sale or provision of such insurance shall not*

year in Maine its loss ratio for credit life insurance was 30.07% and its loss ratio for credit accident and health insurance was 16.06%.

The record also shows that American Universal's 1962 premium income from credit insurance was $2,184,296.42, of which only $543,688.41 was paid to satisfy policyholder claims. After deducting all expenses, it realized from this source a before-tax net income of $1,408,392.-86. For the same year Aetna reported a net income of $59,647.68 from the sale of credit insurance to its debtors in the State of Maine.

8. The trustee has asked this Court, in light of the evidence presented on remand, to reconsider its prior holding that Aetna's loan to the debtors in this case was not rendered void under the Small Loan Law simply because the credit insurance charge was in excess of any premium authorized by the Credit Insurance Law. Suffice it to say, upon this record the Court adheres to its previously expressed view that there is no basis in either the Credit Insurance Law or the Small Loan Law for imputing an insurer's violation of the former to a creditor so as to void the creditor's loan under the latter. In re Richards, 272 F.Supp. at 484-487.

*be deemed a violation of any other law, general or special, of the State of Maine.* The insurance premium or other identifiable charge for such insurance may be collected from the insured or included in the finance charge or principal of any loan or other credit transaction at the time such transaction is completed. (Emphasis supplied.)

This section is written in broad language and without qualification. Nothing could be more clear than that it removes from the ambit of Section 3082 of the Small Loan Law not only the credit insurance premium, but also any profit received by a lender from a credit insurance transaction. Had the Maine Legislature, in enacting the Credit Insurance Law, wished to subject lender profit from credit insurance transactions to the stern proscriptions of the Small Loan Law, it could have enacted something similar to the provision of the Model Credit Insurance Act which was rejected and replaced by Section 1209.[9] The only violation of Section 1208(4) which the trustee asserts, or could conceivably demonstrate on this record, is that Aetna of St. Louis through American Universal realized a substantial profit from the sale of credit insurance in connection with a loan transaction. The receipt of such a profit, whether or not a violation of Section 1208(4), is expressly excepted by Section 1209 from being a violation of any other law of this state.

The Court feels compelled to add that this record reveals abuses on the part of the lenders and insurers involved which cry out for immediate and effective regulatory action.[10] But as the Court observed in its opinion of July 20, 1967, "[I]t is for the Maine Legislature, and not this Court, to enact appropriate remedial legislation." In re Richards, 272 F.Supp. at 487.[11]

For the reasons stated, the Court finds that the credit insurance charges made by Aetna Finance Company of Maine to the debtors in this proceeding did not render its loan usurious and void under the provisions of the Maine Small Loan Law. Accordingly, the objections of the trustee and the debtors to the allowance of Aetna's claim is overruled and Aetna's claim is allowed.

It is so ordered.

---

9. The Maine Credit Insurance Law was based upon the Model Credit Insurance Act proposed by the National Association of Insurance Commissioners. See In re Richards, 272 F.Supp. at 484. However, the second sentence of Section 1209 as quoted above was not a part of the Model Act. The Model Act section which was replaced by Section 1209 read:
   "Nothing in this Act shall be construed to authorize any payments for insurance now prohibited under any statute, or rule thereunder, governing credit transactions." See Vol. 1, 1961 Proceedings, National Association of Insurance Commissioners, p. 304.

10. There can be little doubt on this record that Aetna of St. Louis, American Universal and Old Republic acted jointly to fix premium rates to be charged Aetna debtors which would provide a substantial profit to American Universal as reinsurer. The circumstances of this case thus provide a graphic illustration of the economic phenomenon of "reverse competition," a long deplored feature of credit insurance transactions in many states. For additional comment on the evils of reverse competition in the credit insurance industry, see e.g., Hearings on Credit Insurance before the Subcommittee on Antitrust and Monopoly of the Senate Committee on the Judiciary, 90th Cong., 1st Sess., pt. 1 at 189–192; Vol. 1, 1961 Proceedings N.A.I.C., p. 296.

11. It is worth noting that since 1962 the Maine Legislature has amended Section 3082 of the Small Loan Law so as to expressly except from the proscription of that section "insurance premiums for group life insurance and group accident and health insurance and any gain or return" to a small loan company from the sale of such insurance to its debtors. P.L. (Me.) 1963, ch. 141 § 3–A; P.L. (Me.) 1967, ch. 473 § 4.